Williams, C. J.
The controversy here relates to the distribution of a fund in the hands of Hull as assignee for the benefit of the creditors of Michael Charlton. The fund is the proceeds of the sale of lands on which, at the time of the assignment, the plaintiff in error, and Sturgeon, the defendant in error, each claim to have had a lien, and not being sufficient to satisfy both, the priority, as between them, is the matter in dispute here. The plaintiff in error recovered a money judgment against the assignor, Michael Charlton, and A. B. Charlton, in the court of common pleas of Wyandot county, on the 17th day of November, 1886, and caused an execution to issue thereon to the sheriff of Crawford county, who, on the 30th day of that month, levied the writ on the lands in question, thqn owned. by Michael Charlton, and made all the necessary entries concerning the writ and levy in his foreign execution docket. The writ was returned by order of plaintiff’s attorney, without further proceedings under it. An execution was also issued on 'the judgment to the sheriff of Columbiana county, and was levied by him on lands there situate, belonging to A. B. Charlton, on the 18th day of November, 1886, and a return thereof made similar to that on the Crawford county execution. A. B. Charlton was surety of Michael Charlton for the debt on which the judgment was rendered.
After the executions were so levied and returned, Michael Charlton executed two mortgages on the Crawford county lands on which the levy had been made, to Sturgeon, as security for a bona fide indebtedness; one of the mortgages was filed for record August 22, 1887, and the other April 7, 1888.
*272 On the 7th day of November, 1891, the plaintiff in error caused another execution to be issued on his judgment recovered in Wyandot county, directed to the sheriff of Crawford county, which was on that day levied on the same lands that were seized on the first writ and returned without sale; and a like proceeding was had with respect to the lands of A. B. Charlton, in Columbiana county.
On this state of facts the court of common pleas gave the judgment lien priority over the mortgages, and directed the distribution of the fund accordingly. The circuit court reversed the judgment.
Under the decision in the case of The Coal Co. v. Bank, ante, 233, the lien of the judgment on the Crawford county lands was a valid and subsisting one when the mortgages were executed and filed for record, and the lien of the latter was subordinate to that of the judgment unless the issuing and levy of the subsequent execution constituted an abandonment of the lien resulting from the levy of the former one; and whether it did or not is one of the questions peculiar to this case.
The object in suing out the last execution was to prevent the judgment from becoming dormant, and to continue its lien on the lands taken on the first writ. There was no other way in which that could be done, except, perhaps, by suit to marshal the liens, and bring the lands to sale. It is suggested that a writ could have been issued directing the sale under the former levy. But the requirement of such a writ to sell is not more imperative than that of the execution which was issued. The course pursued would have been unobjectionable as a method of preserving the lien of the judgment on lands situated in the county *273 where it was recovered. Boughton v. Lord, 10 Ohio St. 453; Liebman v. Ashback, 36 Ohio St., 94. And the statute does not require a different mode where the lands lie in another county. The mortgagee is in no worse position by the continuation of the lien by the method adopted, than he was when his mortgages were made. They were subordinate to the judgment lien when taken, and the security thereby obtained has not been diminished. The judgment was then unsatisfied and is still so; and instead of the issuing and levying of the last execution indicating an intention to waive or abandon the lien created by the levy of the first one, or justifying any inference by the mortgagee to that effect, it afforded unequivocal evidence of the contrary intention. There was, therefore, no waiver or abandonment of the judgment lien; and, as it remained in force when the proceeding was commenced by the assignee to sell the lands, it was entitled to priority over the mortgages.
Another claim made in this case, but apparently not so much relied on, is that, as the judgment was alien on the lands of A. B. Charlton, in Columbiana county, as well as on those of Michael, in Crawford county, while the mortgages were liens only on the latter, the plaintiff in error should be required first to exhaust the Columbiana county land, before resorting to that encumbered by the mortgages. But it is clear the facts do not make a case for the application of the principle that a creditor who has a lien on one fund only, may compel another creditor having a prior lien thereon, and also a lien upon another fund, to. exhaust the latter before resorting to the former fund. That rule applies only where both funds are the property of the common debtor, or person .who ought *274 in equity to pay both creditors ; it has no application where the exclusive fund is the property of a surety for the debt for which that fund is bound. Here, A. B. Charlton was surety for Michael on the debt, the collection of which was sought by the levy of the execution on the lands of theformer. It is his equitable right to have the principal’s property applied to the satisfaction of the debt, to the exoneration of his own ; or, if he should be compelled to pay it , he would be entitled to be subrogated to the rights of the creditor, and enforce the judgment lien against the property of the principal, and to all the benefits of that lien, Which, being superior to Sturgeon’s mortgages, would at last appropriate the fund in question in preference to the mortgages.
The judgment of the cvrcuit cornd must be reversed, and that of the common pleas affirmed.